# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-929V
Filed: June 13, 2025

| | |
|---|---|
| ABBY ADAMS, *Administrator of the* Estate of DONALD C. ADAMS, <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Special Master Horner |

*Phyllis Widman, Widman Law Firm, LLC, Linwood, NJ, for petitioner.*
*Alexa Roggenkamp, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 14, 2024, petitioner's counsel filed the instant motion for an award of interim attorneys' fees and costs in the amount of $43,483.50.[2] (ECF No. 78, pp. 1-2, 4-5.) For the reasons discussed below, I award petitioner interim attorneys' fees and costs in the reduced amount of $39,887.15.

### I.   Procedural History

On June 26, 2019, petitioner, as administrator of the estate of Donald C. Adams, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10,

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Prior to the issuance of this decision, petitioner's counsel filed a second motion for interim attorneys' fees and costs on February 17, 2025. (ECF No. 94.) This decision does not address petitioner's second motion.

1

*et seq.* (2012),[3] alleging that Donald C. Adams ("Mr. Adams") suffered cardiac arrest and anoxic brain injury post-cardiac arrest that ultimately led to his death as the result of the influenza ("flu") vaccine that he received on October 11, 2018.[4]  (ECF No. 1.)  The case was originally assigned to a different Special Master.  (ECF No. 4.)  Petitioner filed medical records and a statement of completion in July of 2019.  (ECF Nos. 7-8; Exs. 1-5.)  In August of 2019, the case was reassigned to the undersigned.  (ECF Nos. 10-11.)  Thereafter, petitioner filed additional medical records and a second statement of completion.  (ECF Nos. 14-15; Ex. 6.)  On June 11, 2020, respondent filed his Rule 4(c) Report, recommending against compensation.  (ECF No. 22.)  Petitioner filed additional medical records in August of 2020.  (ECF No. 25; Ex. 7.)

The undersigned ordered petitioner to file an expert report to support her claim.  (Non-PDF Scheduling Order, filed June 12, 2020).  In a status report filed on November 23, 2021, petitioner indicated that she identified a pharmacologist willing to provide an expert opinion but noted her intent to also retain an expert cardiologist.  (ECF No. 35.)  During a status conference held on January 10, 2022, the undersigned advised that a pharmacology opinion alone was likely insufficient and indicated that obtaining a cardiology opinion was likely, at minimum, critical to petitioner carrying her burden of proof.  (ECF No. 37.)  Petitioner filed an expert report by cardiologist and electrophysiologist Mayer Rashtian, M.D., and supporting medical literature in May of 2022.  (ECF Nos. 39, 41; Exs. 8-18.)  Subsequently, petitioner filed additional medical records.  (ECF Nos. 48, 53; Exs. 19-20.)  In September of 2023, respondent filed a responsive expert report by cardiologist Shane LaRue, M.D.  (ECF No. 62; Exs. A-B.)  Thereafter, the parties exchanged an additional round of reports by Dr. Rashtian and Dr. LaRue (ECF Nos. 64, 72; Exs. 21, D), and filed additional medical records (ECF Nos. 67-68; Exs. 22, C).  In January of 2024, a two-day entitlement hearing was scheduled to commence on October 23, 2024.  (ECF No. 71.)

Petitioner filed this instant motion for interim attorneys' fees and costs on August 14, 2024.  (ECF No. 78.)  Petitioner's counsel requests a total of $43,483.50 for attorneys' fees and costs, including $35,963.50[5] in attorneys' fees and $7,520.00 in

---

[3] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

[4] Petitioner initially alleged that Mr. Adams suffered his injuries that ultimately led to his death as the result of the pneumococcal and flu vaccines that he received on October 11, 2018.  (ECF No. 1.)  However, as respondent pointed out in his Rule 4(c) Report, the pneumococcal vaccine that Mr. Adams received, PPSV23, is not a pneumococcal conjugate and is therefore not a vaccination covered by the Act.  (ECF No. 22, p. 10 (citing 42 C.F.R. § 100.3(a)(XII)).)  As a result, the case proceeded only with respect to petitioner's allegations regarding the flu vaccine.

[5] In petitioner's motion, petitioner's counsel, Ms. Widman, requested $36,677.75 in fees.  (ECF No. 78, pp. 2, 20.)  However, review of Ms. Widman's billing records reveals several errors in the calculation of her total fees.  First, Ms. Widman's billing summary states that she billed 32.85 hours at a rate of $400 per hour for work completed in 2022, for a total of $13,140.00.  (*Id.* at 16, 20.)  However, review of her billing records indicate that Ms. Widman billed 31.25 hours at a rate of $400 per hour for work completed in 2022, for a total of $12,500.00.  (*See id.* at 12-16.)  Second, Ms. Widman's billing summary states that she billed 14.85 hours at a rate of $420 per hour for work completed in 2023, for a total of $6,311.25.  (*Id.* at 18, 20.)  While review of her billing records reveal that Ms. Widman did in fact bill 14.85 hours at a rate

2

costs. (*Id.* at 2, 4-5.) In response, respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." (ECF No. 79, p. 1.) He deferred to the undersigned to determine whether petitioner has met the legal standard for an award of interim attorneys' fees and costs as set forth in *Avera v. Secretary of Health & Human Services*, 515 F.3d 1343 (Fed. Cir. 2008), as well as the statutory requirements for an award of attorneys' fees and costs. (*Id.* at 2.) Respondent requests that the Court exercise discretion in determining a reasonable award for attorneys' fees and costs. (*Id.* at 5.)

## II.  An Award of Interim Attorneys' Fees and Costs is Appropriate

The Vaccine Act allows for the special master to award reasonable attorneys' fees and costs. § 300aa-15(e). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera*, 515 F.3d at 1352.

Additionally, the Federal Circuit has held that interim fee awards are permissible and appropriate under the Vaccine Act, although there is no presumption of entitlement to such fees. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1374-75 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352. In *Avera*, the Federal Circuit explained that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In *Shaw*, the Federal Circuit clarified that, "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375; *see also Chinea v. Sec'y of Health & Human Servs.*, No. 15-95V, 2019 WL 3206829, at *2 (Fed. Cl. Spec. Mstr. June 11, 2019) (observing three factors that have been considered when exercising discretion to award interim attorneys' fees: (1) whether the fee request exceeds $30,000; (2) whether the costs requested, in the aggregate, are more than $15,000; and (3) if the case has been pending for more than 18 months (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017))). In sum, awards of interim fees and costs are discretionary and are intended to avoid undue hardship.

Here, petitioner stresses the amount of fees and costs incurred, the fact that the case was proceeding to an entitlement hearing, and the uncertainty of the length of time necessary to resolve this matter as factors supporting an award of interim fees and costs. (ECF No. 78, p. 2.) In light of the above, I exercise my discretion to allow an

---

of $420 per hour, this totals $6,237.00, not $6,311.25. Additionally, Ms. Widman's billing summary incorrectly states that she billed 9.1 hours at a rate of $375 per hour for work completed in 2021, when review of her billing records reveal she only billed 9 hours at $375 per hour for work completed in 2021. (*See id.* at 10-12, 20.) However, the total provided in Ms. Widman's billing summary of $3,375.00 is correct and therefore did not erroneously impact the calculation of total fees. Accordingly, Ms. Widman's billing records reveal that her attorneys' fees total $35,963.50, not $36,677.75.

award of interim fees and costs. At the time this instant motion was filed, the petition had been pending for over five years. Moreover, as noted above, respondent has not objected, but instead deferred to my discretion as to whether petitioner has satisfied the standard for an interim award of attorneys' fees and costs in this case.

### III.  Reasonableness of the Requested Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of attorneys' fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). In determining the appropriate amount to be awarded, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee awarded based on specific findings. *Id.* at 1348.

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests[,] . . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). However, "[t]he failure of respondent to identify with particularity any objection to a request for attorney's fees and costs may be taken into consideration by the special master in the decision." Vaccine Rule 13(a)(3).

#### A. <u>Hourly Rates</u>

Review of billing records indicates that Ms. Widman billed $350 per hour for work completed in 2018, 2019, and 2020; $375 per hour for work completed in 2021; $400 per hour for work completed in 2022; $420 per hour for work completed in 2023; and $480 per hour for work completed in 2024. (ECF No. 78, pp. 7-20.) Ms. Widman's requested rates for work completed in 2018 through 2023 are reasonable and consistent with rates awarded in her prior decisions. *E.g.*, *Foukarakis v. Sec'y of Health*

*& Human Servs.*, No. 20-1547V, 2024 WL 1156130, at *2 (Fed. Cl. Spec. Mstr. Feb. 22, 2024) (awarding Ms. Widman $350 per hour for work completed in 2019-2020 and $375 per hour for work completed in 2021); *Clark v. Sec'y of Health & Human Servs.*, No. 17-1553V, 2023 WL 2319374, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 2, 2023) (awarding Ms. Widman $350 per hour for work completed in 2018-2020, $375 per hour for work completed in 2021, and $400 per hour for work completed in 2022); *Hughes v. Sec'y of Health & Human Servs.*, No. 20-1548V, 2024 WL 1253782, at *3 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (awarding Ms. Widman $400 per hour for work completed in 2022 and $420 per hour for work completed in 2023).

While the undersigned and another special master have previously denied Ms. Widman's request of $480 per hour for work completed in 2024, a significant factor in those determinations was Ms. Widman's failure to explain or substantiate her proposed rate increase as required by Vaccine Rule 13. *Williams v. Sec'y of Health & Human Servs.*, No. 18-1860V, 2025 WL 755057, at *2, *4 (Fed. Cl. Spec. Mstr. Feb. 11, 2025) (Roth); *Kinney v. Sec'y of Health & Human Servs.*, No. 18-1522V, 2025 WL 1305394, at *3 (Fed. Cl. Spec. Mstr. Apr. 11, 2025). In this case, Ms. Widman included a brief explanation indicating that her requested rate for 2024 "is at the lowest end of the allowable rate for her corresponding years of experience in practice and in the vaccine court." (ECF No. 78, p. 20.) Ms. Widman was admitted to the bar in 1999 and therefore had been in practice for 25 years at the time this instant motion was filed. (*Id.*) The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2024 provides that $475 to $563 is an appropriate hourly rate for attorneys with 20 to 30 years of experience in practice.[6] Given how close the requested rate is to the bottom end of the relevant tier, Ms. Widman's requested rate of $480 per hour for work completed in 2024 is reasonable.

### B. Reduction in Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include hours that are "excessive, redundant, or otherwise unnecessary" in their fee applications. *Saxton*, 3 F.3d at 1521. In reducing an award of attorneys' fees, the essential goal is to achieve rough justice. *Florence v. Sec'y of Health & Human Servs.*, No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016). Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

After review of the submitted billing records, a reduction in Ms. Widman's fees is necessary for several reasons. First, Ms. Widman billed for administrative tasks, such as document filing, which are not compensable in this program.[7] *See, e.g.*, *Paul v.*

---

[6] The Fee Schedule for 2024 can be accessed at https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

[7] For example, a non-exhaustive list of these entries includes: "filing of notice of intent to remain in program" on February 21, 2020; filing of motion for extension on March 22, 2021; "filing motion for extension of time/ECF" on September 20, 2021; filing of motion for extension on March 11, 2022; filing of

5

*Sec'y of Health & Human Servs.*, No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023) (noting that clerical and secretarial tasks are not compensable in the program); *Foukarakis*, 2024 WL 1156130, at *3 (reducing Ms. Widman's fee award due to billing entries for non-compensable administrative tasks including filing, scanning, and optimizing).  Second, some of Ms. Widman's billing entries are vague, which frustrates the Court's ability to assess the reasonableness of the request.[8]  *See, e.g.*, *Boman v. Sec'y of Health & Human Servs.*, No. 15-0256V, 2017 WL 7362539, at *4-6 (Fed. Cl. Spec. Mstr. Sept. 20, 2017) (special master reducing fees by 20% for, *inter alia*, vague billing).  Third, some of Ms. Widman's billing entries suggest that she billed for paralegal-level work, such as medical records requests, at her attorney hourly rate.[9]  While attorneys in the Vaccine Program are permitted to perform and bill for paralegal-level work, such work must be billed at a rate comparable to what a paralegal would be paid for performing the same task.  *See, e.g.*, *Doe v. Sec'y of Health & Human Servs.*, No. XX-XXXV, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (noting that requesting, collecting, and organizing medical records are paralegal-level tasks); *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009) (reducing attorneys' fee award for billing at her attorney rate for tasks relating to the collection of medical records, including subpoenaing records and communicating directly with hospitals and other providers regarding outstanding records, which are tasks paralegal in nature), *mot. for rev. denied*, 106 Fed. Cl. 600 (2009), *aff'd*, 406 F. App'x 479 (Fed. Cir. 2011); *Turpin v. Sec'y of Health & Human Servs.*, No. 99-535V, 2008 WL 5747914, at *6-7 (Fed. Cl. Spec. Mstr. Dec. 23, 2008) (rejecting attorney's argument that collection of medical records is a task that needs to be performed by attorneys and

---

motion for extension on December 19, 2022; "filing of status report" on October 16, 2023; "filing of updated exhibit list" on November 1, 2023; "Filing of expert witness's response" on November 1, 2023; and filing of motion for interim fees on August 14, 2024.  (ECF No. 78, pp. 7-20.)

[8] For example, Ms. Widman billed for "file review" on numerous occasions without providing any additional detail or description regarding the task.  (ECF No. 78, pp. 7-20.)  For some of the billing entries for "file review," Ms. Widman provided some minimal context for the task.  For example, on October 3, 2022, Ms. Widman billed for "File review - email to client requesting additional information."  (*Id.* at 15.)  However, these entries are still not especially informative of the actual need for the file review.

[9] For example, Ms. Widman billed for various communications with Bayhealth in May of 2024, such as "Receipt and review of email from Bayhealth with response" on May 1, 2024; "Drafted/reviewed follow-up email to Bayhealth" on May 6, 2024; and "Two telephone calls to Bayhealth" on May 17, 2024.  (ECF No. 78, p. 19.)  While these billing entries are vague, these communications presumably relate to the undersigned's scheduling order directing petitioner to file a certified copy of petitioner's medical records from Bayhealth Medical Center.  (Non-PDF Scheduling Order, filed Apr. 18, 2024.)  Therefore, as these billing entries likely relate to petitioner's request for a certified copy of her medical records, Ms. Widman billing for these tasks at her attorney rate is inappropriate.  Additionally, in 2022 and 2023, Ms. Widman billed for various tasks relating to communications regarding possible medical transport or emergency medical services records, such as "Review of correspondence to EMS" on November 18, 2022; "Telephone call with Delaware Medicare regarding transport records" on December 19, 2022; "Review of email from Ellendale Fire Co. with response" on January 23, 2023; "Telephone call to Carlisle Fire Company regarding ambulance" on March 9, 2023.  (ECF No. 78, p. 16.)  These billing entries presumably relate to respondent's request for any emergency medical services records for petitioner's encounter with emergency medical services on October 12, 2018.  (ECF No. 45.)

reducing his fee award accordingly); *Busey v. Sec'y of Health & Human Servs.*, No. 21-1840V, 2023 WL 8650001, at *2 (Fed. Cl. Spec. Mstr. Nov. 13, 2023) (reducing the attorney's fee award for billing for tasks that are considered paralegal in nature, including tasks relating to medical records requests, at the attorney's rate). Lastly, some of Ms. Widman's billing entries appear to be duplicative or excessive.[10]

Considering all of the above, I find that a 10% reduction to the requested attorneys' fees is reasonable and appropriate. This results in an attorneys' fees award of $32,367.15.[11]

## IV.   Reasonableness of the Requested Attorney Costs

Petitioner requests an award of $7,520.00 in interim costs, representing $535.00 in costs incurred by counsel for medical records and court fees, $1,650.00 in costs paid by petitioner for Dr. Rashtian's initial payment, and $5,335.00 in unpaid costs for work completed by Dr. Rashtian. (ECF No. 78, pp. 2, 4-5.)

### A. Expert Fees

Expert work in this program is also assessed using the lodestar method. *Avera*, 515 F.3d at 1347 (applying the lodestar approach to the Vaccine Act); *Chevalier v. Sec'y of Health & Human Servs.*, No. 15-001V, 2017 WL 490426, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017) (citing *Avera* and applying the lodestar calculation to both attorneys' fees and expert costs). Generally, expert hourly rates are based on a number of factors, many of which touch broadly on the expert's qualifications and on the market for the relevant expert services, but which also include "the nature, quality, and complexity of the information provided" by the expert, as well as "any other factor likely to be of assistance to the court in balancing the interests" at stake. *Aycock v. Sec'y of Health & Human Servs.*, No. 19-235, 2023 WL 8869423, at *7 (Fed. Cl. Spec. Mstr. Nov. 8, 2023) (citing *McClain v. Owens-Corning Fiberglas Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)); *see also Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997).

Petitioner requests an hourly rate of $550 for 12.7 hours of work completed by Dr. Rashtian on this case, for a total of $6,985.00. (ECF No. 78, pp. 4-5, 29-33.) At the time petitioner filed this instant motion, Dr. Rashtian had provided an initial report and a responsive supplemental report (Exs. 8, 21), as well as a comprehensive summary of petitioner's relevant medical history. (ECF No. 41, Ex. 10.) A search of prior cases reveals that Dr. Rashtian is new to the Vaccine Program. As a result, an hourly rate has not previously been set for Dr. Rashtian.

---

[10] An example of Ms. Widman's duplicative billing entries includes billing for "Review of email and medical summary sent by expert with response" on May 12, 2022, and "Review of medical summary" on May 12, 2022. (ECF No. 78, p.14.) She also frequently billed 0.1 hours for minor tasks, such as reviewing ECF notifications, a practice for which she has previously been criticized. *Williams*, 2025 WL 755057, at *5.

[11] As indicated in n. 5, *supra.*, the total billing in this case was $35,963.50. Multiplying that figure by 0.9 to account for a 10$ reduction equals $32,367.15.

7

A review of prior cases reveals that cardiologists serving as expert witnesses in the Vaccine Program have been awarded hourly rates between $350 per hour and $500 per hour.  *E.g.*, *Bourche v. Sec'y of Health & Human Servs.*, No. 15-232V, 2018 WL 7046894, at *4 (Fed. Cl. Spec. Mstr. Dec. 19, 2018) (awarding expert cardiologist's requested rate of $350 per hour); *Beyerl v. Sec'y of Health & Human Servs.*, No. 20-32V, 2021 WL 4205303, at *5 (Fed. Cl. Spec. Mstr. Aug. 18, 2021) (awarding expert cardiologist's requested rate of $400 per hour); *Scheffler v. Sec'y of Health & Human Servs.*, No. 19-260V, 2022 WL 16580270, at *6-7 (Fed. Cl. Spec. Mstr. Oct. 3, 2022) (awarding one expert cardiologist's requested rate of $500 per hour and the second expert cardiologist's requested rate of $400 per hour); *Reese v. Sec'y of Health & Human Servs.*, No. 20-968V, 2023 WL 7220778, at *7 (Fed. Cl. Spec. Mstr. Sept. 28, 2023) (awarding expert cardiologist's requested rate of $500 per hour).  While an hourly rate of $500 has historically represented the top end of rates awarded to highly qualified experts in the Vaccine Program, the undersigned has stressed in prior decisions that an hourly rate of $500 does not represent the absolute ceiling for reasonable expert costs.  *Smith v. Sec'y of Health & Human Servs.*, No. 18-0043V, 2020 WL 1243238, at *9 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Callaghan ex rel. K.B. v. Sec'y of Health & Human Servs.*, No. 19-1032V, 2022 WL 1863920, at *3 (Fed. Cl. Spec. Mstr. May 5, 2022).  Additionally, some special masters have recently awarded highly qualified experts hourly rates exceeding $500, effectively recognizing that expert rates cannot realistically remain at $500 per hour indefinitely.  *E.g.*, *Robertson v. Sec'y of Health & Human Servs.*, No. 18-0554V, 2024 WL 1599577, at *2 n.3 (Fed. Cl. Spec. Mstr. Mar. 18, 2024); *Anderson v. Sec'y of Health & Human Servs.*, No. 14-879V, 2020 WL 3495950, at *2 (Fed. Cl. Spec. Mstr. May 22, 2020); *Smith v. Sec'y of Health & Human Servs.*, No. 22-498V, 2024 WL 3913509, at *3 (Fed. Cl. Spec. Mstr. July 15, 2024).  In awarding expert hourly rates exceeding $500, some special masters have recognized that one of the underlying purposes of the Vaccine Act is to ensure that petitioners have access to high quality experts.  *E.g.*, *Aycock*, 2023 WL 8869423, at *9.

Here, Dr. Rashtian is board certified in cardiology and cardiac electrophysiology and has been in practice for approximately 30 years.  (Ex. 9, p. 2; Ex. 8, pp. 1-2.)  He currently practices as a cardiologist and electrophysiologist at Foothill Cardiology Medical Group and serves as an associate clinical professor at University of Southern California Keck School of Medicine and the University of California, Los Angeles School of Nursing.  (Ex. 9, pp. 2-3; Ex. 8, p. 2.)  He has coauthored approximately twenty-five publications and five abstracts.  (Ex. 9, pp. 4-7.)  Considering Dr. Rashtian's qualifications, I find that the requested rate of $550 per hour for the work he completed in the case is appropriate and reasonable.  Additionally, I find the total number of hours billed by Dr. Rashtian to be appropriate and reasonable, given the tasks he performed.  Accordingly, petitioner is awarded Dr. Rashtian's expert fees in full.

B. Other Costs

I have reviewed the remainder of the costs requested and find that they are reasonable and sufficiently documented.  Therefore, I award reimbursement of those

8

costs in full, which total $535.00 in costs incurred by counsel for medical records and court fees.

V.   **Conclusion**

**In light of the above, petitioners' application for interim attorneys' fees and costs is hereby GRANTED and petitioner is awarded interim attorneys' fees and costs in the total amount of $39,887.15 to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[12]

**IT IS SO ORDERED.**

**s/Daniel Horner**
Daniel Horner
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.